ORIGINAL

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ULYSSES INC., Plaintiff, | ) | 04- 938C |
| v. | ) | FILED JUN - 1 2004 U.S. COURT OF FEDERAL CLAIMS |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**COMPLAINT**

Plaintiff, Ulysses Inc., ("Ulysses"), by its attorneys, Gdanski & Gdanski LLP, as and for its Complaint against the United States of America (hereinafter referred to as "Defendant" or "Agency") alleges as follows:

1. Plaintiff, Ulysses, is a corporation organized and existing under the laws of the state of New Jersey with its principal place of business in Farmingdale, New Jersey.

2. Defendant is the United States of America, acting by and through its Department of Defense, Defense Supply Center Columbus, ("Agency") located at 3990 E. Broad St., P.O. Box 16704, Columbus, OH 43216-5010. Ph:(614)692-7500.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

3. Ulysses was awarded Contract / Purchase Order No. SP0960-02-M-4209, ("Contract 4209") on April 29, 2002 for the production of P/N 178AS112 Circuit Card Assembly Critical Application Item.

4. The contact was for a quantity of eighty five units ("85") and specifically stated on the face page in bold capitalized letters that "**ACCELERATED DELIVERY**

**IS ACCEPTABLE AND DESIRED AT NO COST TO THE GOVERNMENT.**"

5. The contract listed two contract line items ("CLINs"), the first CLIN 0001 had a stated quantity of 38, at a unit price of $525.00 for a total amount of $19,950.00.

6. CLIN 0002 had a stated quantity of 47, at a unit price of $525.00, for a total amount of $24,675.00.

7. The contract value for Contract 4209 was $44,625.00.

8. Ulysses has performed government contracts specifically supplying item P/N 178AS112, which is an internal component of P/N 178AS100.

9. Upon award, in order to perform in an accelerated time frame, Ulysses began production of the part in accordance with the specifications of the Department of the Navy, Naval Air Systems Command.

10. Ulysses received a letter from Brian Kennedy, Contracting Officer, regarding both contracts 4209 and 5456 stating that Ulysses is not a Navy approved manufacturer for Cage 072E5 178AS112. The letter stated that if Ulysses can not supply this exact part then the agency would cancel the contract without cost to the government.

11. In August, 2002, the agency issued a stop work order to Ulysses. The stop work order referenced both contract 4209 and contract 5456.

12. By August 2002, Ulysses had substantially manufactured the contract items.

13. Ulysses promptly responded to the stop work order and sent a letter to the agency on August 26, 2002 referencing contracts 4209 and 5456.

14. In the letter Ulysses stated that it has historically been both the manufacturer of the part and has manufactured the equipment, having manufactured both P/N 178AS112, and the final component P/N 178AS100.

15. Ulysses has been considered as an approved source for P/N 178AS112 and the final component P/N 178AS100.

16. If Ulysses was in fact not an approved source for parts 178AS112, and P/N 178AS100, the agency had waived this requirement in the past.

17. Mr. Toutsas, President of Ulysses, explained that Ulysses and another company owned by Mr. Toutsas, Melstrom Manufacturing Corp., had previously manufactured the part and had also manufactured the end equipment, Circuit Firing Equipment P/N 178AS100.

18. Ulysses attached copies of the purchase orders it completed for the same part for other companies as well as the finished product, Circuit Firing Equipment P/N 178AS100 which is the next highest assembly which the part goes into.

19. Ulysses completed the part for Sikorsky Aircraft order 3P7853063, June 6, 1997, Aero International Inc. order #P7964575, Sikorsky Aircraft order #P7964575, Australian Government order #4500068888, April 4, 2002.

20. Ulysses also attached a copy of an order for the part from Associated Aircraft Mfg. & Sales for 16 units dated April 17, 2002. This order was for the same part P/N 178AS112 for a total of 16 units.

21. Ulysses also attached other records of production and supply of this specific part to government contractor companies showing that it produced both the part and the end product of which the part was one component.

22. On October 14, 2002, Ulysses again contacted the agency by letter stating that they were awaiting a response from the government.

23. Ulysses alerted the government on November 13, 2002 that one of the contracts was 95% complete and the second contract 85% complete and Ulysses decided to complete the production because stating that it would not be cost effective to restock the components and reset the job in the future.

24. By letter dated November 20, 2002, Ulysses suggested a possible solution stating that if the government doubted its ability to manufacture the part then the agency could impose a First Article requirement at no cost to the government and inspect and test the First Article.

25. The government disregarded this request and failed to inspect and perform First Article testing on the part, even though Ulysses had performed 95% of the contract.

26. Amendment / Modification P00001 was issued June 17, 2003 to cancel CLIN 0001 and CLIN 0002 for part Number 5998-00-007-1450 in contract 4209.

27. This complaint is timely as it is brought within 1 year of the issuance of Amendment / Modification 00001 signed on June 17, 2003 canceling the contract.

## SECOND CAUSE OF ACTION

28. Plaintiff repeats and incorporates all the allegations in Paragraph 1 through 27.

29. Ulysses has successfully provided both P/N 178AS112, as well as P/N 178AS100 to the government in the past.

30. Ulysses offered the government an opportunity to test the part to ensure its conformity to the requirements at no cost the agency.

31. By letter dated November 20, 2002, Ulysses offered the agency the option of imposing a First Article requirement on the part or for the agency to verify the data in Ulysses files and witness the inspection and the test of the part. Ulysses offered this to allay the misguided fears of the agency stating, "Therefore, if you are still in doubt of our ability to manufacture the units according to military specifications and standards, you may impose a F/A requirement at no cost to the Government, which F/A/ can be tested and inspected in our facility or can be sent to any designated Government facility by your office and this can be accomplished within 10 working days as far as we are concerned."

32. The agency improperly failed to accept Ulysses First Article submission and test Ulysses part in order to ensure compliance with the specifications.

WHEREFORE, as a result of the Agency's improper action, as stated above, Ulysses has incurred substantial costs associated with this contract and has been damaged by the Agency's actions and requests that this Court grant Ulysses the following relief:

1. Issue a determination that the Agency should accept Part 178AS112 as Ulysses is an approved source and pay Ulysses the total contract amount for Contract 4209 of $44,625.00.
2. Issue a determination that if Ulysses is not on the agency's approved source list, by allowing Ulysses to provide these parts in the past, the government has waived

the requirement for Ulysses to be on the approved source list and should pay Ulysses the total contract amount for Contract 4209 of $44,625.00.

3. Issue a determination that the Agency has acted unreasonably by its failure to test Ulysses First Article and by canceling Contract 4209 despite Ulysses completion of over 95% of the part.
4. Enter a judgment against the United States and in favor of Ulysses in the amount to be determined at trial but at least $$44,625.00. plus interest; and
5. Award Ulysses costs and attorney fees pursuant to the Equal Access to Justice Act; and
6. Grant Ulysses any other relief that the Court considers appropriate.

Date: May 28, 2004

Respectfully submitted,

Scott H. Gdanski
Attorney for Plaintiff
1420 Queen Anne Road, Suite 7
Teaneck, New Jersey 07666