**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ULYSSES INC., | ) | |
| Plaintiff, | ) | Nos. 04-938C and 04-939C |
| v. | ) | |
| | ) | (Judge Williams) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Ulysses Inc., ("Ulysses"), by its attorneys, Gdanski & Gdanski LLP, respectfully requests the Court deny Plaintiff's Motion to Dismiss on the grounds stated below. In support of its motion, Plaintiff relies upon the complaint and the following brief.

Statement Of Facts

Ulysses was awarded Contract / Purchase Order No. SP0960-02-M-4209, ("Contract 4209") on April 29, 2002 for the production of P/N 178AS112 Circuit Card Assembly Critical Application Item. The contact was for eighty five units for a total value of $44,625.00. On June 27, 2002, Ulysses was awarded a second contract, Contract / Purchase Order No. SP0960-02-M-5456, ("Contract 5456") for the production of P/N 178AS112 Circuit Card Assembly Critical Application Item. The contact was for ninety nine units for a total value of $50,490.00.

Upon award, Ulysses immediately began production of the item in accordance with the Department of the Navy's indications on the face page desire for "accelerated delivery".

Ulysses received a letter dated February 14, 2002 from Contracting Officer Brian Kennedy, in reference to both 4209 and 5456 stating that Ulysses is not a Navy approved manufacturer for Cage 072E5 178AS112, warning that if Ulysses can not supply this exact part then the agency would cancel the contract without cost to the government.

In August 2002, the agency issued a stop work order to Ulysses for both 4209 and 5456. By August 2002, Ulysses had substantially manufactured the contract items. Ulysses responded to the stop work by letter on August 26, 2002 stating that it has historically been both the manufacturer of the part and has manufactured the equipment itself having manufactured both P/N 178AS112, and the final component P/N 178AS100.

Ulysses alerted the government on November 13, 2002 that one of the contracts was 95% complete and the second contract 85% complete and Ulysses decided to complete the production because stating that it would not be cost effective to restock the components and reset the job in the future.

Ulysses offered the government different options by another letter on November 20, 2002 and suggested that the agency could impose a First Article requirement at no cost to the government and inspect and test the First Article. Ulysses offered this to allay the fears of the agency stating, "Therefore, if you are still in doubt of our ability to manufacture the units according to military specifications and standards, you may impose a F/A requirement at no cost to the Government, which F/A/ can be tested and inspected in our facility or can be sent to any designated Government facility by your office and this can be accomplished within 10 working days as far as we are concerned." On June 17, 2003, the government issued a modification canceling both purchase orders. On June 1, 2004, Ulysses filed two complaints in this Court which has since consolidated.

<u>Argument</u>

The government issued contract modification P0001 on June 17, 2003 canceling both contracts. The modifications for both of these contracts, 5456 and 4209, specifically stated, "Cancel the following CLIN(s) to the extent indicated below at no cost or liability to the government or the contract corp."

The clause the government relies on at page 3 of its Brief says as follows, "The Federal Acquisition Regulation ('FAR') has defined a claim as a written demand for written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract."

In our particular case the contractor is seeking an "adjustment or interpretation of contract terms or other relief arising from or relating to the contract."

Historically contractors challenging terminations have done so without the necessity of claiming quantum which can be done in a bifurcated proceeding. Challenges to terminations of contracts can be determined jurisdictionally by either a board of contract appeals and/or this Court with a remand back to the parties to discuss quantum and if the parties are unable to negotiate quantum, then the contracting office is to issue a separate contracting office's decision on quantum, which is then appealable separately.

What occurred here was an appeal from the Modification that cancelled the contract dated June 17, 2003. This Court's jurisdiction permits entertaining such challenges to a contracting officer's actions within one year. The Modification canceling the contracts permit a challenge under the CDA, even if no amount is requested.

The clause cited does not limit relief only to a sum certain but also to the adjustment or interpretation of contract terms or other relief arising from or relating to the contract. A finding that the government breached the contract is sufficient to trigger a separate proceeding for a contractor to then formally request an equitable adjustment for the parties to negotiate quantum. It is well settled that a contractor can appeal a termination action without having yet appealed the quantum. It is significant for contractors to be able to protect past performance records and to delete any negative past performance records such as a cancellation of a properly entered into contract even though the government would like to do so without liability or cost.

Present before the Court is a valid appeal of a "cancellation" of the contract. Quantum, we concede, is not yet before this Court, but the Court has proper jurisdiction of the issue of the validity of the "cancellation" of the contract. The Court should either find it has jurisdiction to consider whether there was an improper cancellation and / or a breach of the contract by the government.

In Pro / Des, supra, the GSBCA, properly found that the issue of the termination was properly before it, while quantum was not yet ripe. Here, the Plaintiff satisfies the test in Pro / Des, Inc. v. GSA, 95-2 BCA P.27, 659, April 20, 1995.

Alliant Tech Systems, Inc. v. USA, 178 F3d 1260, supports the proposition that the type of non-monetary relief sought here is permitted under the disputes clause. Further, the fact that the cancellation modification did not contain the final language is also not destructive of Plaintiff's jurisdictional position.

Date: March 14, 2005

Respectfully submitted,

S/ Scott H. Gdanski
SCOTT H. GDANSKI

Gdanski & Gdanski, LLP.
25 Sherwood Ridge Road
Pomona, NY 10970
845-362-4800
Attorney for Plaintiff
Ulysses, Inc

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March 2005, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion To Dismiss was filed electronically with notice to be sent to all parties.

S/ Scott H. Gdanski