# In the United States Court of Federal Claims

### No. 04-938C
### No. 04-939C
### (consolidated)

### (Filed June 30, 2005)

* * * * * * * * * * * * * * * * * * * * * * * * * * *
|  |  |
|---|---|
| **ULYSSES, INC.,** | Subject Matter Jurisdiction; |
|  | Contract Disputes Act, 41 U.S.C. |
| **Plaintiff,** | §§ 605, 609; Claim; Contracting |
|  | Officer's Final Decision. |
| **v.** |  |
|  |  |
| **THE UNITED STATES,** |  |
|  |  |
| **Defendant.** |  |

* * * * * * * * * * * * * * * * * * * * * ** * * * *

Scott Gdanski, Gdanski & Gdanski, LLP., Pomona, New York, for Plaintiffs.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Deborah A. Bynum, Assistant Director, James D. Colt, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C.

---

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

---

**WILLIAMS**, Judge.

In these consolidated cases, Ulysses, Inc. challenges the Defense Supply Center Columbus' (DSCC) cancellation of two purchase orders for the production of circuit cards.[1]  Plaintiff disputes the agency's determination that it is not an authorized manufacturer of the items, and seeks a declaratory judgment that it is an approved source.  Further, Plaintiff seeks the total contract amounts it would have received absent the cancellation,  representing its costs of production.

---

[1]  Plaintiff filed two separate actions, No. 04-938C and No. 04-939C on June 1, 2004.  On January 10, 2005, No. 04-939C was reassigned to this Court, and the cases were consolidated.

1

This matter comes before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction, on grounds that Plaintiff has failed to meet the jurisdictional prerequisites of the Contracts Disputes Act (CDA), 41 U.S.C. § 601 et seq. Because Plaintiff has failed to submit a "claim" to the contracting officer (CO) or obtain a CO's final decision as required by the CDA, this action is dismissed.

## Factual Background[2]

Plaintiff was awarded Contract/Purchase Order No. SP0960-02-M-4209 (Contract 4209) on April 22, 2002, for production of the P/N 178AS112 Circuit Card Assembly Critical Application Item. The contract was for eighty-five units for a total value of $44,625.00. On June 27, 2002, Plaintiff was awarded a second contract, Contract/Purchase Order No. SP0960-02-M-5456 (Contract 5456) for the production of ninety-nine units of this identical item for a total value of $50,490.00. Both contracts specifically stated: "**ACCELERATED DELIVERY IS ACCEPTABLE AND DESIRED AT NO COST TO THE GOVERNMENT**." Compls. ¶ 4 (emphasis in original).[3]

Upon award of the contracts, Plaintiff immediately began production of the items in accordance with Defendant's desires for "accelerated delivery." On February 14, 2002, Plaintiff received a letter from Contracting Officer Brian Kennedy, in reference to both contracts 4209 and 5456, stating Plaintiff was not an approved manufacturer for Cage 072E5 178AS112 and warning that if Plaintiff could not supply the exact part, Defendant would cancel the contract without cost. Compls. ¶ 10.

In August 2002, Defendant issued a stop work order directing Plaintiff to stop producing the units under both contracts. Compls. ¶ 11. Plaintiff had by this time substantially manufactured the contracted items. Id. ¶ 12. Plaintiff responded to the stop work order by letter dated August 26, 2002, stating that it has been a manufacturer of the end item, Circuit Firing Equipment P/N 178AS100 and that the item at issue here, Cage 072E5 178A5112 is a component of this end item. Id. ¶ 14. This letter went unanswered.

Plaintiff sent another letter dated October 14, 2002, requesting under the Freedom of Information Act, "the source who has indicated to you that we are not an approved source to manufacture this item." Def.'s Reply Br., Attachment D. In a letter dated November 13, 2002, Plaintiff advised Defendant:

---

[2] This background is derived from Plaintiff's Complaint and Opposition to Defendant's Motion to Dismiss and the correspondence attached to Defendant's Reply Brief in Support of Motion to Dismiss.

[3] "Compls." refers to the Complaints in Nos. 04-938C and 04-939C. Similar allegations relating to both contracts are described under the same paragraph numbers in each complaint.

One of the contracts is approximately 95% complete and the second contract is approximately 80% - 85% complete. In view of the fact that both contracts are close to completion we intend to go back into production and complete the remaining work that is to be done. We realize that in the event that the unthinkable happens, which is cancellation of the contracts on the basis that we are not the manufacturer of the item, the cost of the remaining percentage of the work to be done will not be included in the settlement cost. The reason for us in completing the assemblies is that it will not be economical to restock the components and reset the job in the future.

In the event you decide to cancel the contracts, we would appreciate your response to our letter of October 14, 2002, and furnish us with the information requested as well as justify the reasons for not considering us as the manufacturer of the item after we provided you with all the information indicating that we are.

Def.'s Reply Br., Attachment B.

By letter dated November 20, 2002, Plaintiff suggested that if Defendant had doubts about its ability to manufacture the item, it could impose a First Article testing requirement at no cost to Defendant. Plaintiff also suggested that a Defense Contract Management Command representative could "verify the data in our files as well as witness the inspection and test of the subject unit." Def. Rep. Br., Attachment C. Defendant did not pursue these offers. Compls. ¶ 25.

Over eight months later, on June 17, 2003, Defendant issued contract modifications cancelling both contracts 4209 and 5456. Compls. ¶ 26. The modifications cancelled all remaining contract line items under both purchase orders "at no cost or liability to the Government or the contractor." Contract 4209, Modification P00001; Contract 5456, Modification P00001 (June 17, 2003). Plaintiff does not allege that it subsequently submitted any claim or other correspondence to the CO about these modifications. Plaintiff filed two complaints in this Court on June 1, 2004, which have since been consolidated. Plaintiff seeks the total contract amounts of $44,625.00 under Contract 4209, and $50,490.00 under Contract 5456.

## Discussion

Subject matter jurisdiction may be challenged at any time, by any parties, by the Court sua sponte, and even on appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must presume undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheur v. Rhodes, 416 U.S. 232, 236 (1974); Cedar-Sinai Med. Ctr. V. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993); Holland v. United States, 57 Fed. Cl. 540, 551 (2003). Once the Court's jurisdiction has been challenged, plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002);

3

Newby v. United States, 57 Fed. Cl. 283, 289 (2003).

The Tucker Act, 28 U.S.C. § 1491, sets out the this court's jurisdiction over disputes arising under the CDA 41 U.S.C. §§ 601-13 (2000) as follows:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the [CDA], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under [section 605 of the CDA].

28 U.S.C. § 1491(a)(2).

Section 605 of the CDA "sets forth the process for resolving claims by a contractor against the United States relating to a contract and provides in pertinent part: 'All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.'"  Texas Health Choice, L.C. v. Office of Personnel Management, 400 F.3d 895, 899 (Fed. Cir. 2005) (quoting 41 U.S.C. § 605(a)(2000)); see also CW Government Travel, Inc. v. United States, 63 Fed. Cl. 369, 381 (2004).

The Federal Circuit has "enforced the strict limits of the [CDA] as 'jurisdictional prerequisites to any appeal.'"  England v. The Swanson Group, Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004) (quoting Sharman v. United States, 2 F.3d 1564, 1568-69 n.6 (Fed. Cir. 1993).  In this Court, "jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim."  Guernsey & Co. v. United States, 2005 WL 1023510, 12 (Fed. Cl. 2005) (quoting The Swanson Group, Inc., 353 F.3d at 1379); see also  James M. Ellett Const. Co., Inc. v. United States, 93 F.3d 1537, 1541-1542 (Fed. Cir. 1996) ("Thus for the [Court of Federal Claims] to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.") (citing Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995)).

Although the CDA does not define a "claim," the Federal Acquisition Regulation (FAR) defines a claim as:

> A written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract.  48 C.F.R. § 2.101 (2004).

Any non-routine submission, seeking money damages by a contractor to the government is a valid claim if it is: (1) a written demand; (2) seeking as a matter of right; (3) the payment of money

in a sum certain. See Ellett, 93 F.3d at 1542; Reflectone, 60 F.3d at 1574.  While a claim need not be "submitted in any particular form or use any particular wording," the contractor must provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir.1987).  In addition, "a series of letters can be read together to comprise a clear and unequivocal statement giving the contracting officer notice of the basis for the contractor's claim." CW Government Travel, 63 Fed. Cl. at 383 (quoting Kalamazoo Contractors, Inc. v. United States, 37 Fed. Cl. 362, 368 (1997)).

Further, the claim must request a final decision.  Alaska Pulp Corp. v. United States, 38 Fed.Cl. 141, 144-45 (1997).  A request for a "final decision," however, need not be "explicit." Ellett, 93 F.3d at 1543.  The contractor's intent to make such a request can be "'implied from the context of the submission.'" Id.  (quoting Heyl & Patterson v. O'Keefe, 986 F.2d 480, 483 (Fed. Cir.1993)).

In the instant matter, the three letters submitted by Plaintiff, even when read together, do not give the CO notice it was challenging a cancellation or demanding the full contract amount -- matters which Plaintiff did not raise until it filed the instant action.  Rather, Plaintiff's three letters were submitted to Defendant prior to the cancellation and could not have challenged that event or claimed attendant monetary losses.  Plaintiff's pre-cancellation letters were nothing more than attempts to convince Defendant that Plaintiff was an "authorized manufacturer" of the circuit card capable of fulfilling the contracts.

Plaintiff relies on Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir. 1999), to argue that its claim properly seeks the type of non-monetary relief the court may entertain under the CDA without a demand for a sum certain.  This reliance is, however, misplaced because Alliant does not obviate the requirement that a claim must be presented to the CO for final decision. Section 605(a) is clear:  "[a]ll claims by a contractor relating to a contract shall be in writing and shall be submitted to the contracting officer for decision."  41 U.S.C. § 605(a).  See, e.g.,  The Swanson Group, Inc., 353 F.3d at 1379.  Pursuant to this requirement, the Alliant plaintiff obtained a final decision from the contracting officer before proceeding in this Court.

Plaintiff also contends that cancellation of the contract was equivalent to the CO's final decision.  However, the modifications did not constitute final decisions which could be appealed in this Court because, as previously noted, Plaintiff did not submit a claim.  See The Swanson Group 353 F.3d at 1379-1380.

------

## Conclusion

1.    Defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED.**

2.      The Clerk is directed to dismiss these actions.[4]  No costs.


                                        s/MaryEllen Coster Williams
                                        **MARY ELLEN COSTER WILLIAMS**
                                        **Judge**

---

[4] This dismissal does not prevent Plaintiff from challenging any adverse final decision it may receive from a CO on its claims.